901 F.2d 497
 58 USLW 2631
 CSX TRANSPORTATION, INC., Consolidated Rail Corporation,
Norfolk and Western Railway Company, and Grand
Trunk Western Railroad Company,
Plaintiffs-Appellees,
v.
The PUBLIC UTILITIES COMMISSION OF OHIO, and Thomas V.
Chema, Ashley C. Brown, Gloria Gaylord, Alan R. Schriber,
and Lenworth Smith, Jr., in their respective capacities as
Chairman and Commissioners of the Public Utilities
Commission of Ohio, Defendants-Appellants.
 No. 88-4185.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 17, 1989.
Decided April 13, 1990.
 
 Samuel H. Porter, Robert W. Trafford (argued), Porter, Wright, Morris & Arthur, Columbus, Ohio, for plaintiffs-appellees.
 Janice E. Kerr, J. Calvin Simpson, James T. Quinn, San Francisco, Cal., Robert S. Tongren, James B. Gainer (argued), Office of the Atty. Gen., Public Utilities Section, Columbus, Ohio, for defendants-appellants.
 Donald T. Trotter, Office of the Atty. Gen., Olympia, Wash., amicus curiae States of Wash., Or., Nev., Tenn., Tex., and Mo.
 Janice E. Kerr, J. Calvin Simpson, James T. Quinn, San Francisco, Cal., amicus curiae, State of Cal.
 Before GUY, BOGGS and NORRIS, Circuit Judges.
 BOGGS, Circuit Judge.
 
 
 1
 Plaintiff railroads sought and received summary judgment for declaratory and injunctive relief against defendants Public Utilities Commission of Ohio, its Chairman, and its Commissioners, against state regulation of hazardous materials transportation, claiming that such regulation was preempted by the Federal Railroad Safety Act, 45 U.S.C. Sec. 421 et seq. 701 F.Supp. 608. The defendants appealed, and we now affirm.
 
 
 2
 * The Hazardous Materials Transportation Act (49 U.S.C.App. Sec. 1801 et seq.) (HMTA) governs the intermodal regulation of hazardous material transportation; the Secretary of Transportation (Secretary) has authority to promulgate rules and regulations under it. Under the HMTA, states can implement regulations governing the transportation of hazardous material if such regulations are consistent with federal provisions promulgated under the HMTA. 49 U.S.C.App. Sec. 1811(b).
 
 
 3
 Pursuant to the HMTA, Ohio enacted the Ohio Hazardous Materials Transportation Act (OHMTA) on September 26, 1988. See Am.Sub.H.B. No. 428, 1988 Ohio Legislative Service at 5-820 (Baldwin). The OHMTA authorized the Public Utilities Commission of Ohio (PUCO) to adopt and enforce as state requirements the federal rules regulating the intermodal transportation of hazardous materials; the statute provided in relevant part that "[t]he rules adopted under this section shall be consistent with, and equivalent in scope, coverage, and content to, the provisions of the 'Hazardous Materials Transportation Act'...." Ohio Rev.Code Ann. Sec. 4907.64.
 
 
 4
 On September 27, 1988, CSX Transportation Incorporated, Consolidated Rail Corporation, Norfolk & Western Railroad Company, and Grand Trunk Western Railroad Company (collectively, the Railroads) filed suit in the United States District Court for the Southern District of Ohio, Eastern Division, against the PUCO and its commissioners, Thomas V. Chema, Ashley C. Brown, Gloria Gaylord, Alan R. Schriber, and Lenworth Smith, Jr. (collectively, the PUCO). The Railroads operate in and through the state of Ohio, and thus would be subject to the proposed regulations.
 
 
 5
 The Railroads sought declaratory relief and temporary and permanent injunctive relief against the enactment of the OHMTA and its implementing administrative regulations on the ground that they are preempted by the Federal Railroad Safety Act (FRSA) and a burden on interstate commerce in violation of article I of the United States Constitution. The FRSA, 45 U.S.C. Sec. 421 et seq., regulates general railroad safety. The FRSA does not permit states to promulgate laws relating to railroad safety over subject matter on which the Secretary has already promulgated a rule. 45 U.S.C. Sec. 434.
 
 
 6
 The PUCO informed the Railroads that the regulations enacted pursuant to the OHMTA would not become enforceable against railroads until December 10, 1988. In response to this information, the Railroads withdrew their request for a preliminary injunction and filed for partial summary judgment on the preemption issue on October 26, 1988. The Railroads sought to enjoin the PUCO permanently from enforcing the regulations; they also sought a declaration that the statutes and regulations were subject to the FRSA preemption provision. The Railroads claimed that the FRSA expressed the intent of Congress to preempt state rules such as the challenged provisions of Ohio law.
 
 
 7
 On November 10, 1988, the PUCO filed a cross motion for partial summary judgment on the preemption issue raised by the Railroads. It contended that the FRSA preemption provision applies only to matters of general railroad safety, and not to the regulation of intermodal hazardous materials transportation, even when applied to railroads. The PUCO contended that the HMTA created a dual system of federal and state regulation, under which states could govern transportation of hazardous materials, by rail or otherwise, through laws consistent with their federal counterparts. 49 U.S.C.App. Sec. 1811. The Ohio laws, it asserted, were within this sphere of state authority. It requested an order from the District Court finding Ohio Revised Code sections 4905.83 and 4907.64 valid and enforceable.
 
 
 8
 The court held a hearing on November 30, 1988, and concluded that the Ohio statutes in question constituted laws relating to "railroad safety" within the definition of the FRSA preemption provision. 45 U.S.C. Sec. 434. On December 12, 1988, the district court granted the Railroads' motion for partial summary judgment and granted a premanent injunction. In particular, the court held that the FRSA preempted sections 4905.83 and 4907.64 of the Ohio Revised Code, and sections 4901:2-7-01 through 4901:2-7-22 and 4901:3-1-10 of the Ohio Administrative Code. The PUCO now appeals from this grant of summary judgment.
 
 II
 
 9
 In 1966, Congress created the Department of Transportation (DOT). See 49 U.S.C. Secs. 1651-1660, as amended. The DOT received the authority under several laws previously vested in a number of government agencies and departments to regulate, among other things, the transportation of hazardous materials. P.L. 89-670, 49 U.S.C. 1651 (1966). The authority to regulate under one of these laws, the Explosives and Other Dangerous Articles Act, was transferred from the Interstate Commerce Commission. 49 U.S.C. Sec. 1655(e)(4).
 
 
 10
 This authority to regulate, among other things, the transportation of hazardous materials transferred to the Secretary was delegated by statute to modal administrations (in this case, the Federal Railroad Administration and the Federal Highway Administration). The Federal Railroad Administration (FRA) had authority to promulgate hazardous material transportation regulations for railroads through its administration of the Explosives Act. 49 U.S.C. Sec. 1655(f)(3)(A) (1966), amended by 49 U.S.C. Sec. 1655(f)(3)(A) (1974). The Federal Highway Administration (FHA) had similar authority for motor carriers. 49 U.S.C. Sec. 1655(f)(3)(B) (1966), amended by 49 U.S.C. Sec. 1655(f)(3)(B) (1974). In both cases, the Secretary had no power either to retain the authority or transfer it to a modal administration other than the FRA (for railroads) or FHA (for motor carriers). 49 U.S.C. Sec. 1655(f)(3) (1966), amended by 49 U.S.C. Sec. 1655(f)(3) (1974).
 
 
 11
 In 1970, Congress passed an omnibus bill which enacted, among other provisions, the Hazardous Materials Transportation Control Act of 1970 (HMTCA) and the FRSA. Pub.L. 91-458, 84 Stat. 971. The HMTCA was Congress's first attempt at establishing intermodal regulation of hazardous materials. The HMTCA directed the Secretary to establish facilities within the federal government; evaluate hazards surrounding the shipment of hazardous materials; establish a central reporting system for those hazards; and review all aspects of hazardous material transportation to increase the control and safety of such transportation. 49 U.S.C. Sec. 1761 (repealed 1974).
 
 
 12
 The FRSA was enacted to govern railroad safety. The declaration of purpose of the FRSA states:
 
 
 13
 The Congress declares that the purpose of [the FRSA] is to promote safety in all areas of railroad operations ... and to reduce deaths and injuries to persons and to reduce damages to property caused by accidents involving any carrier of hazardous materials.
 
 
 14
 45 U.S.C. Sec. 421. The FRSA allows states to retain some enforcement powers in the area of railroad safety. In relevant part, the preemption provision reads:
 
 
 15
 A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.
 
 
 16
 45 U.S.C. Sec. 434 (emphasis added). Thus, any state regulation over an area covered by the FRSA (whether consistent or not) is preempted. This preemption provision was debated vigorously in Congress prior to passage. The House Report accompanying the FRSA stated that some of the covered "railroad safety" laws "... are set forth in detail in appendix B of this report." H.R.Rep. No. 1194, 91st Cong., 2d Sess., reprinted in 1970 U.S. CODE CONG. & ADMIN.NEWS 4104, 4105. Appendix B lists, among other laws, the Explosives Act.
 
 
 17
 With the passage of another omnibus bill in 1974, true intermodal regulation of the transportation of hazardous materials came into being. Pub.L. No. 93-633, 88 Stat. 2156. This bill enacted the HMTA and amended the DOT enabling act. It also created an independent safety board to oversee the functions and performance of each of the modal administrations within the Department of Transportation. 49 U.S.C.App. Secs. 1901-1902.
 
 
 18
 The HMTA amended the DOT enabling act to prohibit the Secretary from delegating the functions, powers, and duties to administer the Explosives Act to the FRA or the FHA. Pub.L. 93-633, Sec. 113(e)(1), (2). The amended provision read in relevant part for the FRA:
 
 
 19
 The Federal Railroad Administrator shall carry out the functions, powers, and duties of the Secretary pertaining to railroad safety as set forth in the statutes transferred to the Secretary by subsection (e) of this section (other than [the Explosives and Other Dangerous Articles Act].
 
 
 20
 49 U.S.C. Sec. 1655(f)(3)(A). Thus, the regulation of the transportation of hazardous materials moved from a modal to an intermodal basis.
 
 
 21
 The preemption provision of the HMTA differs from that of the FRSA. The HMTA provides that:
 
 
 22
 ... any requirement of a State or political subdivision thereof, which is inconsistent with any requirement set forth in [the HMTA], or in a regulation issued under [the HMTA], is preempted.
 
 
 23
 49 U.S.C. Sec. 1811(a). Thus, unlike the preemption provision of the FRSA, which forbids state regulation on subject matter on which the Secretary has already adopted a regulation, the HMTA allows state regulations which are consistent with federal regulations.
 
 
 24
 In 1980, Congress amended the FRSA. Pub.L. No. 96-423, 94 Stat. 1811 (amending 45 U.S.C. Secs. 431-433). Congress amended Section 425 of the FRSA to allow greater (but still limited) state participation in investigative and surveillance activities relating to railroad safety. 45 U.S.C. Sec. 435(g). The HMTA was not listed as one of these laws. In regard to this omission, the House Report stated that, "[s]ince the [HMTA] is not directed specifically and solely at railroad safety, that Act is not within the scope of the amendment." H.R.Rep. No. 1025, 96th Cong., 2d Sess. 13, reprinted in 1980 U.S. CODE CONG. & ADMIN.NEWS 3830, 3837-38.
 
 III
 
 25
 The question before us is simply this: should a train carrying a load of hazardous waste be considered a railroad which happens to be carrying hazardous waste (thus suggesting application of the FRSA preemption provision) or hazardous waste which happens to be carried by rail (thus suggesting application of the HMTA preemption provision)? The Committee report to the 1974 Act states:
 
 
 26
 The intent of the Committee in these provisions [the HMTA] is to consolidate in the Department of Transportation the [sic] certain basic functions with respect to regulated hazardous materials, while the enforcement of the regulations pertaining to the shippers and carriers of hazardous materials remains delegated to the particular Administration within DOT having jurisdiction over the mode by which such materials move.
 
 
 27
 H.R.Rep. No. 1083, 93d Cong., 2d Sess., 1974 U.S. CODE CONG. & ADMIN.NEWS 7669, 7681. We find it clear from this language, and the legislative history behind it, that the purpose of the HMTA was to consolidate regulation of hazardous material transportation at the Secretarial level, and not to remove such regulation of hazardous material transportation by rail from the preemption provision of the FRSA.
 
 
 28
 Although we credit the PUCO's compelling argument that the creation of the HMTA in 1974 removed promulgation (though not enforcement) of regulations under the Explosives Act from the FRA, we do not believe that such removal changes the fact that FRSA preemption relates to all rules and regulations regarding railroad safety promulgated by the Secretary, whether or not such regulations are promulgated by the FRA through power delegated by the Secretary. See 45 U.S.C. Sec. 434. Clearly, the HMTA is a law relating to railroad safety, even if regulations pursuant to it are promulgated by the Secretary directly, not by the FRA.
 
 
 29
 We further find the PUCO's argument concerning removal of regulatory authority from the FRA by the HMTA unpersuasive in light of the plain and much-discussed preemption provision of the FRSA. See, generally, Hearings Before the Subcommittee on Transportation and Aeronautics of the Committee on Interstate and Foreign Commerce, 91st Cong., 2d Sess. (1970). Repeal or amendment of this preemption provision as it related to the transportation of hazardous materials was not discussed during the passage of the HMTA. In giving the Secretary authority to promulgate regulations involving the intermodal transportation of hazardous materials under the HMTA, we do not believe that Congress concurrently repealed the broad historic federal preemption of state railroad regulation. See National Association of Regulatory Commissioners v. Coleman, 542 F.2d 11 (3rd Cir.1976).
 
 
 30
 We find that the language of the FRSA, "any law ... relating to railroad safety," 45 U.S.C. Sec. 434, applies to the HMTA as it relates to the transportation of hazardous material by rail. The plain meaning of a statute must be given great weight. Watt v. Alaska, 451 U.S. 259, 265-66, 101 S.Ct. 1673, 1677-78, 68 L.Ed.2d 80 (1981). We further note that Congress examined the problems of hazardous material transportation by rail within the context of a more general discussion of railroad safety. H.R.Rep. No. 1194, 91st Cong., 2d Sess., reprinted in 1970 U.S. CODE CONG. & ADMIN.NEWS 4104, 4107.
 
 
 31
 To find that a later statute has repealed an earlier one, we have required that "the later law designates the statute repealed in such manner as to leave no doubt as to what statute is intended." Equitable Life Assur. Soc. of U.S. v. Grosvenor, 426 F.Supp. 67, 71 (W.D.Tenn.1976), aff'd, 582 F.2d 1279 (6th Cir.1978). The HMTA does not fulfill this test. Repeal by implication is disfavored. Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1013, 104 S.Ct. 2862, 2878, 81 L.Ed.2d 815 (1984).
 
 
 32
 The PUCO contends that courts reviewing questions of federal supremacy must "start with the assumption that the historic police power of the states is not to be superseded by federal enactments 'unless that was the clear and manifest purpose of Congress,' " citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). We hold that the FRSA revealed such a purpose, and that the enactment of the HMTA did not demonstrate otherwise. In fact, Santa Fe Elevator also instructs us that one test of preemption is whether "the matter on which the State asserts the right to act is in any way regulated by the Federal Act." Id. at 236, 67 S.Ct. at 1155. In this case, it is clear that matters of railroad safety are governed by the preemption provision of the FRSA.
 
 
 33
 Further, the PUCO argues that preemption is precluded where a state acts within its sphere of authority under a dual system of federal and state regulation established by Congress. Louisiana Public Service Comm'n v. FCC, 476 U.S. 355, 370-78, 106 S.Ct. 1890, 1899-1903, 90 L.Ed.2d 369 (1986); Pacific Gas & Electric Co. v. State Energy Resources Cons. & Dev. Comm'n, 461 U.S. 190, 212-17, 103 S.Ct. 1713, 1726-29, 75 L.Ed.2d 752 (1983). However, we find that the system of regulation created by the FRSA and HMTA is of a different character than that at issue in Louisiana Public Service Comm'n. In that case, the reservations of authority to the state were explicit. Louisiana Public Service Comm'n, 476 U.S. at 370, 106 S.Ct. at 1899. Thus, the Court found that such a clear reservation prevented federal preemption of those areas.
 
 
 34
 In this case, federal power to regulate transportation of hazardous materials is absolute; state power is limited. Thus, unlike Louisiana Public Service where the Court was concerned that "... a federal agency may preempt state law only when and if acting within the scope of its congressionally delegated authority," 476 U.S. at 374, 106 S.Ct. at 1901, we have no qualms about the scope of the DOT's authority to promulgate hazardous material transportation regulations. The only question is whether the PUCO also may do so for railroads.
 
 
 35
 In Pacific Gas & Electric, the state had express power to regulate the economics of nuclear production. 461 U.S. at 205-06, 103 S.Ct. at 1722-23. The federal law, the Atomic Energy Act, did not explicitly prohibit states from exercising economic regulation. The question before the Pacific Gas & Electric Court was whether federal regulatory authority over nuclear production preempted a state regulation which arguably came within the express state authority. Again, the question before us is different. The federal government clearly has the power to regulate all aspects of railroad safety; state power is limited. Thus, the HMTA does not present the same type of dual regulatory authority presented in Louisiana Public Service or Pacific Gas & Electric.
 
 
 36
 We agree with the PUCO that our preemption analysis "is also to be tempered by the conviction that the proper approach is to reconcile 'the operation of both statutory schemes with one another rather than holding one completely ousted.' " Merrill Lynch v. Ware, 414 U.S. 117, 127, 94 S.Ct. 383, 390, 38 L.Ed.2d 348 (1973), quoting Silver v. New York Stock Exchange, 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963) (citations omitted). However, we do not agree with the PUCO's interpretation of this language in this case. A failure to follow the preemption provision of the HMTA in no respect ousts the HMTA. In this case, the decision of the district court, applying the FRSA preemption provision to regulations promulgated under the HMTA, retains the essential character and purpose of both statutes. The national character of railroad regulation and the need for regulation of hazardous material transportation on an intermodal basis are both respected.[1] The decision of the district court is AFFIRMED.
 
 
 
 [1]
 Finding that the regulations issued pursuant to the OHMTA are preempted by the preemption provision found in the FRSA, we find it unnecessary to address the question of whether the Ohio regulations are also preempted by the preemption provision found in the HMTA.cumventing the law by achieving the same result by calling a "rose" by another name