966 F.2d 644
 Robert MAHONY, as father and personal representative of Eve
Mahony, in his own Behalf and as next of kin and
for the use and Benefit of Eve Mahony's
mother, Barbara Mahony,
Plaintiffs-Appellants,
v.
CSX TRANSPORTATION, INC., Defendant-Appellee.
 No. 90-9052.
 United States Court of Appeals,
Eleventh Circuit.
 July 20, 1992.
 
 Allison Ulin Lynch and Pamela Rymer O'Dwyer, Paty Rymer & Ulin, Chattanooga, Tenn., for plaintiffs-appellants.
 Jack Harrell Senterfitt, Gerald L. Mize, Jr., and James W. Hagan, Alston & Bird, Atlanta, Ga., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before BIRCH, Circuit Judge, DYER, Senior Circuit Judge, and FULLAM*, Senior District Judge.
 PER CURIAM:
 
 
 1
 This diversity case involves a railroad accident. On January 23, 1987, Eve Mahony was walking along a road in rural Georgia when she entered a railroad crossing and was struck by an approaching train owned by defendant CSX Transportation, Inc. ("CSX"). Mahony's parents ("plaintiffs") sued CSX for wrongful death, alleging various theories of liability. Two of these theories--that CSX was negligent in operating the train at an excessive speed and that CSX was negligent in failing to install adequate warning devices at the crossing--were dismissed by the district court prior to trial. The court reasoned that these two theories of recovery were preempted by federal law; therefore, the court ruled that evidence relating to these theories would be inadmissible at trial. The case was tried, the jury found in favor of CSX, and the plaintiffs have appealed that adverse judgment.
 
 
 2
 After the parties briefed this appeal, another panel of the Eleventh Circuit decided Easterwood v. CSX Transportation, Inc., 933 F.2d 1548 (11th Cir.1991), cert. granted, --- U.S. ----, 112 S.Ct. 3024, 120 L.Ed.2d 896 (1992). In Easterwood, the panel fully explained the general preemptive effect of the Federal Railroad Safety Act, 45 U.S.C. §§ 421-445 (1988) (the "FRSA"). In particular, the court discussed whether the FRSA and related federal law preempted specific state law tort claims against railroads, including claims sounding in negligence for excessive speed and inadequate warning devices. Easterwood has substantially clarified the law governing Mahony's case. Given the preemption principles announced in Easterwood, our review of this case has convinced us that several of the district court's preemption rulings, and the judgment in favor of CSX which was influenced by those rulings, are in error. Accordingly, we VACATE the judgment in favor of CSX and REMAND the case to the district court for further proceedings consistent with this opinion and with Easterwood.
 
 
 3
 Without intending to expand upon the meaning of Easterwood, we note that at least two principles announced by that panel will have application to the present case on remand. First, the plaintiffs' claim that CSX was negligent because the train was allegedly traveling too fast is preempted by federal law. As stated in Easterwood, a theory "that [an] accident was caused because [a] train was traveling at a negligently high rate of speed" is preempted by specific federal regulations governing the speeds at which trains can travel on particular classes of track. 933 F.2d at 1553. Because the CSX train that struck Mahony was traveling below the maximum speed allowed under federal law, the plaintiffs may not attempt to establish CSX's liability on the basis of the train's alleged excessive speed. See id. at 1553-54.
 
 
 4
 Second, the plaintiffs' theory of liability relating to the inadequacy of the railroad grade crossing (in particular, CSX's failure to install automated warning devices at the crossing) is not preempted by federal law. The Easterwood panel specifically noted that although the federal government was minimally involved in regulating the construction of safer railroad grade crossings, that involvement was not so substantial or specific as to preempt state tort suits based upon a railroad's failure to maintain a safe railroad crossing. See 933 F.2d at 1554-55. Accordingly, in this case, the district court should not have dismissed the plaintiffs' claim that CSX negligently failed to install automated warning signals.*
 
 
 5
 We express no opinion on the merits of the numerous specific arguments pressed by the parties to this appeal. We hold only that the district court's judgment in favor of CSX cannot stand in light of Easterwood. Therefore, we VACATE that judgment and REMAND the case for further proceedings consistent with this opinion and Easterwood.
 
 
 6
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 BIRCH, Circuit Judge, concurring specially:
 
 7
 I agree that we are bound by Easterwood v. CSX Transportation, Inc., 933 F.2d 1548 (11th Cir.1991). I also agree that a fair reading of Easterwood means that the plaintiffs' excessive speed claim is preempted and that the plaintiffs' inadequate warning claim must survive. I therefore join the majority's opinion.
 
 
 8
 I write separately to note my dissatisfaction with Easterwood. By broadly preempting negligent speed claims and generally salvaging negligent failure to warn claims, I fear that the Easterwood panel may be stating the law backwards. Were I writing on a clean slate, I would recognize that, under appropriate circumstances, a plaintiff's excessive speed claim could survive, and a plaintiff's failure to warn claim might be preempted.
 
 I.
 
 9
 In ruling that the speed regulations promulgated pursuant to the FRSA preempt, in a wholesale manner, any claim that a railroad company was negligent for operating its train at an excessive speed, the Easterwood panel fails to distinguish between the two types of negligence theories which might be brought. It seems to me that a wrongful death litigant could advance two distinct theories of a railroad's excessive speed liability. First, the plaintiff might argue that even though the train obeyed the federal speed limit, the railroad was negligent by exceeding the speed limit imposed by state law for that particular section of track. Second, the plaintiff might assert that even though the railroad obeyed the federal speed limit, the operator of the train was negligent for failing to slow down because under the circumstances, a reasonably prudent train operator would have exercised additional caution.
 
 
 10
 I believe that the first negligence theory is preempted by the FRSA, but the second is not. Preemption of the first theory simply respects the Supremacy Clause by recognizing that a railroad company should not be penalized for ignoring state operating procedures that have been intentionally trumped by specific federal legislation. Preemption of the second theory, however, goes far beyond respect for the Supremacy Clause, in that it effectively insulates a railroad from negligence liability for excessive speed as long as the railroad stays within the federal speed limits.
 
 
 11
 One hypothetical can demonstrate that this last result is unwarranted. Suppose the train that struck Mahony was traveling at 59 miles per hour, at night, in a dense fog, and during a stiff rain. If 60 miles per hour was allowed by federal law, CSX could not be sued for negligently excessive speed, even though the train's speed under these circumstances might be clearly unreasonable. To the extent that Easterwood prevents a plaintiff from asserting this second theory of excessive speed liability, I respectfully disagree with the opinion. Ordinarily, "[c]ompliance with a legislative enactment ... [should] not prevent a finding of negligence where a reasonable [person] would [have taken] additional precautions." Restatement (Second) of Torts § 288C (1965).
 
 II.
 
 12
 Turning to the federal preemption of tort claims based upon a railroad's failure to warn, it seems to me that the applicable federal law--the FRSA, its accompanying federal regulations, and the Manual on Uniform Traffic Control Devices for Streets and Highways--requires state and local transportation authorities to make the decisions about the warning devices needed at particular crossings. See Hatfield v. Burlington Northern R.R., 958 F.2d 320, 321-24 (10th Cir.1992). When these governmental authorities have made the safety decisions about a certain crossing, it seems odd to hold a railroad responsible in common law negligence for failing to override the governmental decisions. Indeed, allowing negligence liability to be imposed upon railroads in this manner could defeat the legislature's desire for uniformity in the area of railroad warning devices. Fearing potential liability, railroads may attempt to reach independent decisions on warning devices, notwithstanding the conclusions of those governmental agencies entrusted with the decisionmaking authority under federal law.
 
 
 13
 For this reason, I believe that a plaintiff's claim that a railroad negligently failed to install adequate warning devices can be preempted, as long as the governmental authority with jurisdiction over the applicable crossing reached a decision regarding the appropriate warning devices needed at that crossing. Under such circumstances, federal preemption is sensible because it seems unfair to hold a railroad accountable for the warning decisions made by other entities. In reaching this conclusion, I appear to be supported not only by the decision of the Tenth Circuit in Hatfield, but also by then-Judge Kennedy's opinion in Marshall v. Burlington Northern, Inc., 720 F.2d 1149 (9th Cir.1983). See id. at 1154 (suggesting that federal preemption attaches when "a federal decision is reached through the local agency on the adequacy of the warning devices at the crossing").
 
 III.
 
 14
 In sum, the fairest reading of Easterwood indicates that the FRSA preempts a plaintiff's excessive speed claim but not a plaintiff's failure to warn claim. I agree that we are bound by Easterwood, even though reasonable arguments can be made that would limit Easterwood 's applicability to the present case. Therefore, I join the majority's opinion. However, the reservations I have outlined above are substantial, perhaps significant enough to justify a rehearing en banc.
 
 
 
 *
 Honorable John P. Fullam, Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 *
 We are aware that CSX has asserted that this portion of Easterwood was decided without the benefit of the citation of several applicable federal authorities. Notwithstanding these additional authorities, this panel is bound by the decision in Easterwood. CSX's arguments suggesting that Easterwood was wrongly decided are more appropriately addressed in a motion to rehear the present case en banc