**HOME MORTGAGE BANK, a Utah Chartered Commercial Bank, Plaintiff,**

**v.**

**T. Timothy RYAN, Jr., Director, Office of Thrift Supervision, the Office of Thrift Supervision and the Resolution Trust Corporation, Defendants.**

**T. Timothy RYAN, Jr., Director, Office of Thrift Supervision, Plaintiff,**

**v.**

**George SUTTON, Commissioner, State of Utah Department of Financial Institutions, Defendant.**

**Nos. 90–C–597W, 90–C–569W.**

United States District Court, D. Utah, C.D.

June 26, 1991.

---

Kyle S. McKay, William G. Gibbs, Jeffrey M. Jones, Salt Lake City, Utah, for Home Mortg. Bank.

Stewart M. Hanson, Jr., Charles P. Sampson, Paul M. Simmons, Salt Lake City, Utah, for George Sutton.

Bryce H. Pettey, Salt Lake City, Utah.

Paul Van Dam, Atty. Gen., Salt Lake City, Utah.

Glen R. Dawson, Asst. U.S. Atty., Salt Lake City, Utah.

Daniel W. Anderson, Salt Lake City, Utah.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on cross-motions for summary judgment filed by T. Timothy Ryan, Jr., Director, Office of Thrift Supervision ("Ryan"), and George Sutton, Commissioner, State of Utah Department of Financial Institutions ("Sutton"). Also, the parties filed various other motions and these will be referred to below. The court heard these motions on June 21, 1991. Before the hearing, the court carefully reviewed the memoranda submitted by the parties and all other pertinent papers in the file. After taking the matter under advisement, the court has further considered the law and the facts and now renders the following Memorandum Decision and Order.

## BACKGROUND

The essential facts in this lawsuit are not in dispute. Home was a Utah state chartered savings and loan institution, and was approved for federal deposit insurance from the Federal Savings and Loan Insurance Corporation ("FSLIC") in 1980. For the five fiscal years prior to 1989, Home suffered operating losses, averaging $85,000 per quarter in 1988 and 1989. On November 30, 1989 the Federal Deposit Insurance Corporation ("FDIC") examined

Aaron Kahn and Harvey Levin, Office of Chief Counsel, Office of Thrift Supervision, Washington, D.C., for T. Timothy Ryan, Jr.

Home and determined Home needed approximately $1.5 million dollars to meet its risk-based capital requirements.

As of December 31, 1989 Home had a tangible capital requirement of $259,000 and was $505,000 short of this amount. Home submitted a capital plan to the Office of Thrift Supervision ("OTS") on January 29, 1990 and withdrew that plan on March 14, 1990.

On March 22, 1990 the FDIC sent a letter to Home's Board of Directors stating, among other things, that Home had failed to meet its tangible, core and risk-based capital requirements and that the Regional Office recommended Home's designation as a problem institution. On May 18, 1990 the OTS determined that Home was an unsafe institution and that grounds existed to place it in receivership. That same date, the OTS issued an order appointing the Resolution Trust Company ("RTC") as the statutory receiver for Home. The OTS order provided that RTC's appointment, pursuant to 12 U.S.C. § 1464(d)(2)(D), would not be effective until passage of the 30–day period allowing Sutton to approve or state reasons for disapproving Ryan's findings and order.

Sutton received a copy of the order on the date of its issuance. The parties do not dispute that Ryan issued the order or that Sutton failed to approve, disapprove, or respond to the order or the underlying findings.

On June 15, 1990, Sutton, acting pursuant to state law, received, approved and purportedly made effective Home's application to convert its charter from a savings association charter to a commercial bank charter. Before and following Sutton's approval of the application, Home's deposits were insured by the Savings Association Insurance Fund ("SAIF").

In a letter dated June 19, 1990, Sutton notified the OTS and Ryan that he had approved Home's conversion from a savings association to a commercial bank. Home did not apply for OTS approval of

the conversion and on July 5, 1990 RTC took possession of Home as its receiver. That receivership has continued to this date. Home filed this suit against Ryan on July 13, 1990.

In this case, Ryan and Sutton have filed cross-motions for summary judgment. Consequently, and in rendering this decision, the court will apply the standard applicable to summary judgment motions. No separate discussion will be made as to Ryan's motion to dismiss Home's First Amended Complaint inasmuch as the court's decision on Ryan's and Sutton's cross-motions for summary judgment requires the granting of that motion to dismiss. Finally, inasmuch as no objection has been made to RTC's motion to dismiss Home's First Amended Complaint, that motion will be granted.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991).[1] The non-

---

1. The summary judgment motion may be "opposed by any of the kinds of evidentiary materi-

als listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477

moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v. National Wildlife Fed'n,* — U.S. ——, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990) (quoting *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552).

In considering whether there exists a genuine issue of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir.1991).[2] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. U.S.Ct.D.Utah Civ.R.P. 5(e).

## DISCUSSION

This memorandum decision and order addresses Ryan's and Sutton's cross-motions for summary judgment on Ryan's prayer for declaratory relief.[3] Home seeks a declaration that a Utah chartered savings and loan association may convert under Utah law to a Utah chartered commercial bank without obtaining the approval of the OTS. For the reasons that follow, this court holds the OTS had authority to place Home into receivership and that Sutton's purported approval of Home's conversion was a nullity inasmuch as he failed to obtain OTS approval required under controlling OTS regulations.

Following its determination that grounds existed for placing Home into receivership, the OTS issued an order appointing RTC as Home's statutory receiver. After giving the required 30–days notice to Home and Sutton, Ryan placed Home into receivership. The parties do not dispute that, up to the point of Home's attempted conversion, Ryan and the OTS were duly authorized by and acted in accord with the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") and applicable OTS regulations promulgated under it.

The parties do dispute, however, the effect of Home's attempted conversion into a state commercial bank. Sutton and Home argue that they were authorized under both state and federal law to effect Home's conversion without approval of the OTS. They further contend that, following Home's conversion, Home ceased to be a "savings association" within the meaning of FIRREA and ceased to be subject to OTS authority.

Home's conversion appears to be authorized by Utah Code Ann. § 7–1–713(1), which does not require OTS approval for such conversions. Absent OTS approval, however, Home's conversion was not authorized under federal law. Because federal law is controlling, Home's attempted conversion is null and void.

Regarding the federal authority for Home's conversion, Home contends the Sasser Amendment to FIRREA, 12 U.S.C. § 1815(d)(2)(G), applied in this situation and affirmatively authorized Home to convert without OTS approval because Home remained SAIF-insured following its conversion. At best, however, the Sasser Amend-

---

U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

**2.** "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

**3.** Ryan's and Home's requests for injunctive relief are not addressed by this memorandum decision and order except for the court to say that it views injunctive relief as unnecessary and inappropriate under the circumstances, especially given its resolution of Ryan's and Sut-

ton's cross-motions for summary judgment. Additionally, under 12 U.S.C. §§ 1464(d)(1)(A) & (d)(2)(E), this court is authorized only to "dismiss [actions for declaratory relief] or direct the Director of [OTS] to remove [the] receiver." This court is not empowered to award damages for an illegally imposed receivership. *See Haralson v. FHLLB,* 837 F.2d 1123, 1125 (D.C.Cir. 1988); *Biscayne Federal Savings & Loan Ass'n v. FHLLB,* 720 F.2d 1499, 1504–05 (11th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). Hence, any claim by Home against Ryan for damages in this action is outside the jurisdiction of this court.

ment is neutral as to Home's conversion. At worst it is entirely irrelevant.

As a whole, § 1815 addresses FDIC insurance. At most, § 1815 relates only peripherally to charter conversions under state law. Section 1815 has nothing to do with OTS enforcement of the minimum capital and receivership provisions of FIRREA. In particular, the Sasser Amendment does not affirmatively authorize conversions such as that attempted by Home. As part of § 1815, the Sasser Amendment merely establishes the nonapplicability of the insurance fund conversion prohibition contained in § 1815(d)(2)(A)(ii). Consequently, the Sasser Amendment is inapplicable here and does nothing to abrogate controlling OTS regulations.

Home's attempted conversion into a Utah chartered commercial bank was a "transfer" within the meaning of 12 C.F.R. § 571.5(a).[4] Home argues that it remained the same corporate entity before and after the purported conversion and, therefore, could not have effected a § 571.5(a) transfer. Home's purported conversion into a commercial bank, however, would have made it a legally and functionally different entity. In the regulatory context this distinction is critical, and justifies inclusion of such transfers within the scope of § 571.5(a).

The parties do not dispute that before making the transfer that purported to convert Home into a commercial bank, Home was a savings association. Therefore, Home could not effect the transfer without applying for and receiving approval from the OTS. *See* 12 C.F.R. § 563.22(b) (1990).[5] Because neither Home nor Sutton sought or received OTS approval, Home's purported transfer and conversion were nullities

and Ryan's request for declaratory relief must be granted. Resolution Trust Company will remain as Home's receiver.

Besides being compelled by OTS regulations, the court's decision is buttressed by important policy concerns. Were state financial officers able to approve last minute conversions like the one attempted in this case, they could seriously weaken OTS regulation and oversight of state chartered savings associations. Surely Congress did not intend such a result.

Accordingly,

IT IS HEREBY ORDERED that Ryan's motion for summary judgment is granted as to his request for declaratory relief and Sutton's motion for summary judgment is denied. Ryan and RTC's motions to dismiss Home's First Amended Complaint are granted. Inasmuch as the resolution of the issues referred to in this decision fully resolves these consolidated actions, and so that an immediate appeal may be taken, the court is contemporaneously entering a separate Final Judgment pursuant to Rule 58 Fed.R.Civ.P.

## FINAL JUDGMENT

Various motions were argued to the court in this case on June 21, 1991. Today the court has entered its Memorandum Decision and Order on these motions which is fully dispositive of all issues among the parties in these two consolidated cases. Accordingly, pursuant to that Memorandum Decision and Order and also pursuant to Rule 58, Fed.R.Civ.P., and good cause appearing,

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1. Plaintiff T. Timothy Ryan, Jr., Director, Office of Thrift Supervision

---

**4.** Section 571.5(a), in pertinent part, defines transfers as:

transfers in bulk not made in the ordinary course of business including, but not limited to, transfers of assets and savings account liabilities, purchases of assets, assumptions of savings accounts and other liabilities, and transfers of assets in bulk that are effected by operation of law pursuant to statutory conversions ..., and other reorganizations and combinations; *Provided,* however, that the term "transfers" shall not include transfers in bulk

that are effected by operation of law pursuant to statutory conversions ..., where the surviving entity is a savings association.
12 C.F.R. § 571.5(a) (1990).

**5.** Section 563.22(b) reads, in pertinent part, as follows:

No savings association may at any time make any ... transfer, as defined in § 571.5(a) of this subchapter, of assets or savings account liabilities without application to and approval by the [OTS].
12 C.F.R. § 563.22(b) (1990).

("Ryan"), in Case No. 90–C–569W is granted a declaratory judgment against George Sutton, Commissioner, State of Utah Department of Financial Institutions ("Sutton"), declaring and adjudicating that the appointment of Resolution Trust Company as the statutory Receiver for Home Mortgage Bank ("Home") was done legally and validly under applicable federal law and further declaring and adjudicating that the purported conversion of Home from a savings association charter to a commercial bank charter by Sutton was not done legally or validly and is without legal effect.

2. All other relief requested in Ryan's complaint as against Sutton, in Case No. 90–C–569W, is denied.

3. The counterclaim of Sutton against Ryan, in Case No. 90–C–569W, is dismissed with prejudice and on the merits.

4. The First Amended Complaint of Home against Ryan and The Resolution Trust Corporation, in Case No. 90–C–597W, is dismissed with prejudice and on the merits.

4. No costs are awarded to any party.

5. This is a final judgment resolving all disputes as among the parties in these two consolidated actions.