HOME MORTGAGE BANK, a Utah Chartered Commercial Bank, Plaintiff–Appellant,

v.

T. Timothy RYAN, Jr., Director, Office of Thrift Supervision; Office of Thrift Supervision; and The Resolution Trust Corporation, Defendants–Appellees.

T. Timothy RYAN, Jr., Director, Office of Thrift Supervision, Plaintiff–Appellee,

v.

G. Edward LEARY, Commissioner, State of Utah Department of Financial Institutions, Defendant.

T. Timothy RYAN, Jr., Director, Office of Thrift Supervision, Plaintiff–Appellee,

v.

G. Edward LEARY, Commissioner, State of Utah Department of Financial Institutions, Defendant–Appellant,

HOME MORTGAGE BANK, a Utah Chartered Commercial Bank, Plaintiff,

v.

T. Timothy RYAN, Jr., Director, Office of Thrift Supervision; Office of Thrift Supervision, and The Resolution Trust Corporation, Defendants–Appellees.

Nos. 91–4152, 91–4155.

United States Court of Appeals, Tenth Circuit.

Feb. 17, 1993.

Jeffrey M. Jones (Kyle S. McKay, also of Allen Hardy Evans Rasmussen & Jones, with him on the brief), Salt Lake City, UT, for plaintiff-appellant Home Mortg. Bank.

Bryce H. Pettey, Asst. Atty. Gen. (Paul Van Dam, Atty. Gen., and Billy L. Walker, Deputy Comm'r of Fin. Institutions, with him on the brief), Salt Lake City, UT, for defendant-appellant G. Edward Leary.

Aaron B. Kahn, Asst. Chief Counsel (Harris Weinstein, Chief Counsel, Thomas J. Segal, Deputy Chief Counsel, and David H. Enzel, Sr. Trial Atty., with him on the brief), Office of Thrift Supervision, Washington, DC, for plaintiff-appellee T. Timothy Ryan, Jr. and Defendants–Appellees T. Timothy Ryan, Jr., Office of Thrift Supervision, and The Resolution Trust Corp.

Before LOGAN, LAY,* and BARRETT, Circuit Judges.

* The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

LOGAN, Circuit Judge.

Defendant G. Edward Leary,[1] Commissioner of the Utah Department of Financial Institutions (the Commissioner), appeals the district court's grant of the Office of Thrift Supervision's (OTS's) motion for summary judgment and the denial of the Commissioner's cross-motion for summary judgment. Plaintiff Home Mortgage Bank (Home) appeals the concurrent dismissal of its complaint against OTS. The Commissioner and Home argue that OTS had no authority to declare Home insolvent and appoint a receiver, because Home had converted from a state-chartered thrift to a state-chartered bank. OTS contends that Home's conversion was null and void because Home failed to receive OTS approval, as required by regulation. Although the cases were not merged, because they raise identical questions of law, they have been consolidated for purposes of appeal.

## I

The relevant facts are not in dispute, and are reported in more detail in *Home Mortgage Bank v. Ryan,* 768 F.Supp. 330 (D.Utah 1991). In late 1989, the FDIC determined that Home was not satisfying the tangible capital requirements for savings and loan associations and notified Home of the deficiency. Home submitted a plan to meet the requirements the following January, but withdrew it on March 14, 1990. On March 22, the FDIC informed Home by letter that its failure to satisfy the net capital requirements warranted its designation as a "problem institution." By May 18, 1990, OTS had determined that Home was unsafe, and sought to place it in receivership. OTS appointed the Resolution Trust Corporation (RTC) as receiver that same day. By operation of law, how-ever, the receivership was not to become effective for thirty days.[2]

The Commissioner received the order the day it was issued, but never responded to OTS. However, he did correspond with Home concerning the impending takeover and options Home might pursue to avoid such a result. On June 15, 1990, three days before the receivership of Home was to take effect, the Commissioner approved and made effective a conversion of Home's charter from that of a savings association to that of a commercial bank. This conversion did not affect Home's federal insurance, which was still provided by the Savings Association Insurance Fund (SAIF). For purposes of this appeal, we assume, without deciding, that the Commissioner's action was consistent with applicable Utah law.[3] Home did not seek OTS's approval before converting its charter.

The Commissioner notified OTS of his action on June 19, and OTS responded on July 5, simultaneously serving upon Home the order appointing RTC as receiver. The next day, OTS filed this action, seeking a declaratory judgment that the conversion was improper under federal law and therefore ineffectual. The complaint also sought injunctive relief forbidding the Commissioner from taking similar action in the future. The Commissioner counterclaimed, charging that OTS had no authority to forbid a state-chartered thrift from converting to a state-chartered bank. Subsequently, Home also filed suit against OTS and RTC, seeking a declaration that its conversion was valid notwithstanding its failure to obtain permission from OTS.

The district court consolidated the cases, and both OTS and the Commissioner moved for summary judgment. The court granted

1. G. Edward Leary replaced George Sutton as Commissioner of Financial Institutions upon Sutton's resignation on May 31, 1992. Pursuant to Fed.R.App.P. 43(c)(1), Leary has been substituted for Sutton as party defendant.

2. Under 12 U.S.C. § 1464(d)(2)(D)(i), the Director must obtain "the written approval of the State official having jurisdiction over the insured State savings association that one or more of the grounds specified for" taking over the thrift exist. If the official does not respond within thirty days, however, the Director may proceed without state approval. *Id.* § 1464(d)(2)(D)(ii).

3. OTS argues that Utah law prevented the Commissioner from converting Home's charter in contravention of federal regulations. In view of our disposition of the appeal, we need not address this issue of the interpretation of substantive Utah state law.

declaratory judgment for OTS, finding that OTS had the authority to place Home into receivership, and that the applicable regulations required Home to seek OTS approval before converting.[4] Consequently, the court found Home's conversion to be null and void, and affirmed the appointment of RTC as receiver. It dismissed Home's complaint, raising identical issues, based upon this decision.

We review the district court's grant of summary judgment de novo, applying the same standard used by the district court; i.e., summary judgment is appropriate if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Hatfield v. Burlington N.R.R.*, 958 F.2d 320, 321 (10th Cir.1992), *petition for cert. filed*, 60 U.S.L.W. 3860 (June 8, 1992) (No. 91–1977). "If no genuine issue of material fact exists, we determine if the substantive law was correctly applied." *Id.* Here, there is no dispute over the relevant facts, so a summary disposition is appropriate.

## II

### A

■ Under Article VI of the Constitution, the laws of the United States "shall be the supreme Law of the Land ..., any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Thus, if a state law or regulation conflicts with an applicable federal law, the state provision is preempted. Preemption may be explicit or implicit, and may involve either complete occupation of a particular field by Congress, precluding all state regulation on the subject, or partial preemption only, when a state law or regulation actually conflicts with the federal statutes. *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Preemption may occur through properly promulgated federal regulations as well as through duly enacted laws. "Federal regulations have no less pre-emp-

tive effect than federal statutes." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

■ Under Utah law, a state-chartered financial institution may convert its charter to a different form of state-chartered financial institution upon application to and approval by the Commissioner. Utah Code Ann. § 7–1–713(1). In the case of savings associations, however, federal regulations impose specific requirements. Under 12 C.F.R. § 563.22(b), "[n]o savings association may at any time make any ... transfer, as defined in § 571.5(a) of this subchapter, of assets or savings account liabilities without application to and approval by the Office [of Thrift Supervision]." Section 571.5(a) defines "transfers" as:

> [T]ransfers in bulk not made in the ordinary course of business including, but not limited to, transfers of assets and savings account liabilities, purchases of assets, assumptions of savings accounts and other liabilities, and *transfers of assets in bulk that are effected by operation of law pursuant to statutory conversions*, mergers, consolidations, and other reorganizations and combinations; *Provided*, however, That the term "transfers" shall not include transfers in bulk that are effected by operation of law pursuant to statutory conversions, mergers, consolidations, reorganizations, and combinations, where the surviving entity is a savings association.

(First emphasis added). With respect to state-chartered savings associations that convert to state-chartered banks, then, the applicable federal regulations actually conflict with state law, in that the state law permits a conversion without approval from OTS. The surviving entity here was not a savings association, so the exception set out in § 571.5(a) is inapplicable. Thus, if the federal regulations are valid, they preempt the Utah state law.

---

**4.** The district court denied OTS's request for injunctive relief. OTS did not appeal this rul-

ing.

### B

The parties do not dispute that OTS has the congressionally-delegated authority to promulgate regulations concerning savings associations. *See* 12 U.S.C. § 1464(d)(3). The Commissioner and Home argue, however, that the regulations at issue exceed the scope of the savings association provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183, 277–354 (codified at 12 U.S.C. §§ 1461–1468c).

When a party brings a substantive challenge to otherwise properly promulgated regulations, the reviewing court follows the approach articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[5] "First, if Congress has directly spoken to the precise question at issue and its intent is clear, 'that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Rives v. ICC*, 934 F.2d 1171, 1174 (10th Cir.1991) (quoting *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781), *cert. denied*, —— U.S. ——, 112 S.Ct. 1559, 118 L.Ed.2d 207 (1992). However, if Congress has not addressed the issue, "the reviewing court 'does not simply impose its own construction on the statute.... Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781 (footnote omitted)). The agency's regulations must be upheld unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782. Further, because OTS has primary responsibility for the regulation of savings and loans, its interpretation "is entitled to considerable deference." *Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985).

FIRREA substantially reconfigured the federal regulation of banks and savings associations. Both the Federal Savings and Loan Insurance Corporation (FSLIC) and the Federal Home Loan Bank Board (FHLBB) were abolished, and the OTS and RTC were created. Control over both banks and thrifts was consolidated in the FDIC, and two new insurance funds were created, the Bank Insurance Fund (BIF) and the Savings Association Insurance Fund (SAIF). Pursuant to FIRREA, OTS repromulgated many of the regulations originally issued by FHLBB, updating them to reflect the new law. Section 571.5(a) was one such regulation. The language remained substantially the same as before, with one noticeable alteration: OTS substituted "savings association" for "insured institution" in the exception regarding prohibited transfers. The Commissioner and Home argue that this constituted a substantive change, because a bank retaining SAIF insurance after its conversion from a thrift would be an "insured institution," but not a "savings association," and thus Home would have been entitled to the exception under the old regulation but not under the new version. Even accepting this argument, which OTS disputes, that alone is not a basis for rejecting the regulation.

The Supreme Court "has rejected the argument that an agency's interpretation 'is not entitled to deference because it represents a sharp break with prior interpretations' of the statute in question." *Rust v. Sullivan*, —— U.S. ——, ——, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991) (quoting *Chevron*, 467 U.S. at 862, 104 S.Ct. at 2791). An agency "must be given ample latitude to adapt [its] rules and policies to the demands of changing circumstances." *Id.* (internal quotations omitted). Here, because of the significant changes introduced

---

5. Both the Commissioner and Home have standing to challenge the regulations. OTS's suit for declaratory judgment is equivalent to an enforcement action, and the parties against whom such an action is brought may challenge the regulations on substantive grounds. *See NLRB Union v. Federal Labor Relations Auth.*, 834 F.2d 191, 195 (D.C.Cir.1987).

by FIRREA, OTS's adaptation of the regulation was reasonable.

Because FIRREA altered the terminology employed to define the scope of OTS's authority, retention of the old language would have been confusing. The mandate for the Director of OTS is to "provide for the examination, safe and sound operation, and regulation of *savings associations*." 12 U.S.C. § 1463(a)(1) (emphasis added). As OTS explained when repromulgating the rule, some prior regulations issued under the National Housing Act had referred to "insured institutions," while others promulgated pursuant to the Federal Home Loan Bank Act had referenced "member institutions." *See* 54 Fed.Reg. 49,411, 49,419 (1989). FIRREA replaced these terms with the phrase "savings associations." Thus, not only was the modification of § 571.5(a) permissible, it was necessary for the regulations to comport with the language of the new statute. Even if the change from "insured institutions" to "savings associations" in 12 C.F.R. § 571.5(a) represented a substantive change, the intervening modifications in the governing statute justified the alteration.

## III

Even though the challenged regulations are not invalid solely because they may have represented a change from prior regulations, they must still satisfy the *Chevron* standard to be upheld. OTS candidly admits that "Congress did not expressly determine in FIRREA whether or not OTS must approve of thrift to bank conversions before they can be effectuated." OTS Br. at 29. Therefore, we must determine whether imposition of such a requirement is a permissible construction of FIRREA, keeping in mind the deference owed to the agency charged with administering the statute.

OTS is charged with providing for the "safe and sound operation, and regulation of savings associations." 12 U.S.C. § 1463(a)(1). With regard to state-chartered associations, OTS has the authority to appoint a receiver or conservator if the thrift becomes insolvent or fails to meet minimum capital requirements for safe operation. *See id.* § 1464(d)(2)(C).[6] Because of this responsibility and potential costs to depositors and taxpayers under the insurance program, it is not inconsistent with the intent of FIRREA for OTS to require those institutions seeking to leave its sphere of regulation to receive approval to do so. Regardless of the requirements that may be imposed by the FDIC on the institution after the conversion, OTS has a duty to ensure that state-chartered thrifts cannot evade the financial capital requirements, imposed for the protection of the depositors and the taxpayers, simply by effecting a state-based charter conversion. We hold that 12 C.F.R. §§ 563.22(b) & 571.5(a) constitute a permissible exercise of OTS's regulatory responsibility over state-chartered savings associations as provided by FIRREA.

## IV

■ The Sasser Amendment, on which the Commissioner and Home place great reliance, is irrelevant to this case. In the section of FIRREA concerning the FDIC, Congress forbade the FDIC from approving any conversion transaction until August 9, 1994, subject to certain exceptions. *See* 12 U.S.C. § 1815(d)(2)(A)(ii). Subparagraph (G) of that section, the Sasser Amendment, provides that "[t]his subsection shall not be construed as prohibiting any savings association which is a Savings

---

6. The parties agree that OTS had the authority to appoint a receiver for Home as long as Home remained a state-chartered savings association. The Commissioner and Home argue that this authority terminated upon Home's conversion to a state-chartered bank. The parties disagree over when the receiver was actually appointed. OTS states that the receivership commenced on May 18, but was simply stayed by the 30-day waiting period. The Commissioner and Home assert that no receivership ever took effect, because Home's conversion became effective June 15, four days before the expiration of the waiting period. We decline to reach this issue, because the validity of the regulations does not depend on the thrift having been placed into receivership. Under the regulations at issue here, *any* state-chartered savings association, regardless of financial health, must obtain OTS approval before converting its charter.

**378**

Association Insurance Fund member from converting to a bank charter during the period described in subparagraph (A)(ii) if the resulting bank remains a Savings Association Insurance Fund member." Because Home remained a SAIF member after its conversion, the Commissioner and Home argue that the Sasser Amendment affirmatively authorized Home's action. We do not agree. The Sasser Amendment simply provides an exception to the general moratorium on conversions, making the prohibition of subparagraph (A)(ii) inapplicable to a certain type of conversion. It does not abrogate any other requirements that might be imposed by OTS before such a conversion could take effect, and therefore does nothing to inform our analysis here.

Because the OTS regulations are a permissible manifestation of the regulatory authority conferred by FIRREA, Home was required to obtain OTS approval before converting its charter from that of a savings association to that of a commercial bank. Having failed to do so, Home's purported conversion was contrary to federal requirements, and is therefore null and void. OTS's action of appointing RTC as a receiver for Home was within its statutory authority.

AFFIRMED.